

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVELYN MARTINEZ,          )<br>                              )<br>         Plaintiff(s),    )<br>                              )<br>    vs                        )<br>                              )<br>                              )<br>                              )<br>                              )<br>CITY OF LOS ANGELES,     )<br>                              )<br>         Defendant(s).   )<br>_____) | CIVIL ACTION<br>CASE NO. 2:21-CV-01429-MSC-PD<br><br><br>COMPLAINT |

## I. RELATED CASES

a. None in Federal Court

## II. JURISDICATION AND VENUE

1. Plaintiff, Evelyn Martinez, hereby brings this action against the Defendant under Section 1983 (Civil Action for Deprivation of Rights) 42 U.S.C Section 1983 and because this action arose when the Defendant violated the Plaintiff's Civil Rights as protected by the United States Constitution's Fourth Amendment and the Fourteenth Amendment.

2. This Court has jurisdiction because there is a Federal question as to the violations of the Plaintiff's Civil Rights as declared under the United States Constitution hereby referred to as the US Constitution by the Defendant.

1

because both the Plaintiff and Defendant are located in the District of this Court and because the action giving rise to this action were committed in and within the jurisdiction thus venue of this Court.

## PARTIES

3. Plaintiff, Evelyn Martinez is a citizen of the State of California and currently resides in the County of Los Angeles.

4. The Defendant is the City of Los Angeles and they are located in the downtown area of the City of Los Angeles where they conduct governmental oversight for the City of Los Angeles.

## INTRODUCTION

5. The Plaintiff was an innocent party to horror act(s) carried out by the Defendant that all began with the blatant violations to the Plaintiff's Civil Rights as dictated by the US Constitution 14th and 4th Amendments.

6. The Plaintiff filed a Claim for Damages pursuant to the California Government Act which sets forth a six-month deadline for initiating a Personal Injury Claim against the State of California of which the Defendant, City of Los Angeles is part of and of which under Section 1983 of U.S.C the Plaintiff has a right to bring forth in Federal Court for deprivation of her Civil Rights as stated in the US Constitution.

7. The Defendant issued a Letter of Denial dated August 18th, 2019

regarding the Plaintiff's Claims for Damages against the Defendant and of which the Plaintiff then had six-month in which to file a case against the Defendant. This case is timely filed against the Defendant.

## FACTS

6. On June 12, 2019, the Plaintiff arrived at a Chevron convenience store in the morning as a customer of the establishment. The Plaintiff had her vehicle with her.

7. The Defendant was contacted by a complete stranger to the Plaintiff via their emergency phone number from the landline phone of the Chevron where the Plaintiff was at allegedly and approximately on the 9:00pm o'clock hour of June 12th, 2019 per the Defendant's own printed report and audio recording.

8. The Defendant responded to the call made by the stranger at the Chevron whereas they were informed via a dispatcher of the Defendant that the Plaintiff was not looking to good health wise.

9. The Defendant proceeded to inquire of the phone calling stranger at the Chevron in Woodland Hills, California off Topanga Cyn Blvd and Oxnard Street if the Plaintiff was alert and breathing okay.

10. The stranger proceeded to inform the Defendant that yes the Plaintiff was alert and breathing okay and then asked the Defendant's dispatcher If he wanted to speak to the Plaintiff who was standing right next to the stranger and

3

in a firm, resounding and disturbing voice the Defendant's responded to the stranger that No he did not want to speak to the Plaintiff at all.

11. The Defendant then proceeded to ask the stranger on the phone as the Plaintiff stood right by her what was the Plaintiff doing at that moment to which the stranger responded that the Plaintiff was trying to go to her vehicle and at that time the Defendant hastily responded back to the stranger and instructed her NOT to allow the Plaintiff go back to her own car.

12. The Defendant proceeded to dispatch an ambulance to the Chevron despite the Plaintiff not requesting one because the Defendant chose to ignore the Plaintiff's Right to be secured in her own person and property as described in the 4th Amendment of the US Constitution.

13. The Defendant intentionally chose to not "speak" directly to the Plaintiff and confer with her as to what she wanted to do or needed from them.

14. The Defendant knew the Plaintiff was standing right next to the stranger who placed the call to them despite the Plaintiff not knowing her and chose to bypass the Plaintiff's desires all together for that of a complete stranger then instruct them not let the Plaintiff go to her own vehicle.

15. The Defendant knew the Plaintiff was alert and well especially enough to ask her directly and not through a complete stranger about her needs at that moment whether she wanted their assistance or not such as paramedic services.

16. The Defendant never considered the needs of the Plaintiff especially since they refused adamantly to speak directly to the Plaintiff such as her need to sit in the comfort of her own vehicle parked right outside the Chevron so that she could gather herself and her thoughts and figure out what she wanted to do but instead they chose to send paramedics which then found the Plaintiff sitting helplessly outside the doors of the Chevron on the ground.

17. The paramedics only arrived on the scene because the Defendant proceeded to ignore the Plaintiff's rights not once but twice as they intentionally refused to consider her able and capable to address her own situation and seek help only if she felt it necessary but instead they enlisted the aid of a complete stranger and proceeded to leave the Plaintiff out of the equation.

18. Upon the arrival of the Defendant on the scene the Plaintiff was asked questions regarding her identity and other important questions to which the Plaintiff responded coherently, alert and clearly per the Defendant's own reporting. The Plaintiff was reported by the Defendant as also having strength in her grip and assisting them in going to the ambulance's gurney thus leaving no doubt the Plaintiff was indeed alert and congnizant especially before the paramedics even arrived at the Chevron yet the Defendant had refused to talk to the Plaintiff setting in motion an irreparable chain of events that turned the already fragile life of the Plaintiff into a nightmare forever.

19. The Defendant proceeded to treat the Plaintiff medically on site at the Chevron as she was now in the complete control and mercy of the Defendant who proceeded then to take full advantage of the Plaintiff in yet more acts that went against the Plaintiff's Civil Rights. The Rights violated by the Defendant just a few minutes before starting with the telephone call to them by a stranger who facilitated speaking to the Plaintiff 100% possible and it was the correct action the Defendant should have legally taken.

20. The Plaintiff consequently ended up receiving treatment(s) on site at Chevron initiated 100% by the Defendant now in full control of the now made vulnerable Plaintiff that she did not need and would not have gotten had it not been made possible by the Defendant initial act of violating the Plaintiff's Rights during a call to them by a stranger that day of June 12th, 2019 and consequently thereafter and that then almost cost her her life.

21. The Defendant sought to further cause the Plaintiff harm by entering intentionally erroneous information not favorable to the Plaintiff in their reporting of the events of that call for paramedics such as entering and reporting the Plaintiff as 'Madeline Martinez' and not her real name of Evelyn Martinez. They reported that the Plaintiff had a "Prior Medical History" (PMH) of Chronic Respiratory Failure which is false information.

22. The Defendant reported the Plaintiff's vitals signs as all normal as many

6

as 7-8 test and checkups but when, at the mercy of the Defendant, whom had already violated the Plaintiff's 4th and 14th Amendments, which set a chain of horrible events, never ever experienced by the Plaintiff ever before including an ambulance ride was taken by the Defendant to a nearby hospital the Plaintiff suddenly arrives to the hospital and as reported by the Defendant themselves "unalert".

23. The Defendant had ran a series of test on site at Chevron and in their ambulance all of which were reported as stable and normal except for one test the Plaintiff according to the Defendant tested not normal but it would not have rendered and had not ever rendered the Plaintiff unable to function before and the Defendant now aware of such reading would have stabilized the Plaintiff but instead after administering saline to the Plaintiff and running an EKG then proceeding to transport the Plaintiff to a supposedly nearby hospital only 4 mins away the Defendant reported two further abnormalities in their report 1) being a address of transport different than where the Plaintiff was at and 2) an abnormality in how long it took the Defendant to arrive at the hospital.

24. The Plaintiff upon being forced by the Defendant to interact with them in violation of the Plaintiff's Civil Rights then transported her after treating her without her consent to a supposed to be nearby hospital that upon arrival the Plaintiff had been knocked "unalert" and unable to sign herself into the hospital's Emergency room suddenly as per REPORTED by the Defendant after reporting

the Plaintiff's vitals as normal and stable in their report earlier.

25. The Plaintiff was in a coma and only regain her consciousness after 10 days when she finally awoke to having her toes which were perfect and healthy prior to being transported by the Defendant to a hospital turn black from lack of blood circulation to them as she layed unconscious in a coma.

26. The Plaintiff believes the Defendant sexually molested possibly raped an unconscious Plaintiff because the opportunity existed for such violating acts.

27. The Plaintiff believes the Defendant acted in cahoots with another entity of the Defendant to violate the Plaintiff's Civil Rights the Los Angeles Police Department (LAPD). The Plaintiff believes the Defendant has full knowledge of the LAPD involvement in more Violations by the LAPD to the Plaintiff's Civil Rights as well as other rights too.

28. The Plaintiff woke up after her coma to deep bruises just above her breast area that simply were NOT there before or ever. The hospital gave no explanation about how or why the bruises were there and the Plaintiff has never read anything in any report regarding the origin of those very define bruises in a sensitive area of the Plaintiff's body. The Plaintiff believes the Defendant knows exactly how they got there.

29. The Plaintiff believes the Defendant carried out intentional, severe and very damaging violations to the Plaintiff's Civil Rights as the Plaintiff found herself

alone and vulnerable and suddenly fragile on June 12th, 2019. The Plaintiff believes the acts all of them by the Defendant that day or night were in order to cover up their crimes and Civil Right Violations.

30. The Plaintiff's short-term memory was wiped out, erased intentionally by the Defendant in an attempt to not be accused by the Plaintiff of their heinous acts/crimes/violations.

## DAMAGES

31. The Plaintiff became a Victim of the Defendant's wicked scheme to take advantage of a vulnerable Plaintiff from the get go that is why they acted immediately to violate and deprived the Plaintiff of her Civil Rights under the US Constitution's 4th and 14th Amendment.

32. The Defendant in targeting the Plaintiff's Civil Rights thus cause the Plaintiff irreparable damages setting a chain of events in motion that would seek to alter the Plaintiff's well being forever so that they could take advantage.

33. The Plaintiff lost time away from work for months.

34. The Plaintiff is being billed $1500 plus interest by the Defendant for an ambulance call and transport she never wanted nor called for.

35. The Plaintiff's Civil Rights were violated severely and intentionally and they never let up.

9

## CONCLUSION

36. The Plaintiff did not seek the Defendant out at all on June 12th, 2019. The record shows via official recordings and reports made exclusively by the Defendant that the Defendant acted against the unalienable rights of the Plaintiff intentionally without MERCY and very CRUELLY as the Plaintiff was in a vulnerable state alone and scared having never ever been in that position ever before. If the Defendant upon being asked if they wanted to speak to the Plaintiff about her needing or requiring medical attention would have only done so and not ignored her then only to violate her later as planned then the Plaintiff's suffering and damages would be non existent today.

## III. DEMAND JURY TRIAL

b. Hereby requested

## RELIEF SOUGHT

WHEREFORE, the Plaintiff request the following relief respectfully submitted that the Plaintiff is granted Compensatory and Punitive Damages relief against the Defendant in the amount of $5,000,000.00 (five million dollars) and any and all other Relief the Court sees rightfully due to the Plaintiff for the violating acts and wrongdoing of the Defendant.

Dated  Feb 10, 2021

_____
**EVELYN MARTINEZ**
**5632 Van Nuys Blvd.,**
**#1219**
**Sherman Oaks, CA 91401**
**(310) 999-5888**

## **CERTIFICATE OF COMPLIANCE**

    I, Evelyn Martinez, hereby state that the Complaint I hereby submit is in compliance with the Court rules requiring documents be prepared in Times New Roman (14 point) font.

Dated Feb 10, 2021

EVELYN MARTINEZ
5632 Van Nuys Blvd.,
#1219
Sherman Oaks, CA 91401
(310) 999-5888

